Chancellor Johnson
delivered the opinion of the Court.
It seems that at the time of the sale of the land by the sheriff, and the purchase by defendants, there was still a small balance of the principal, and the costs, remaining due on the judgment at the suit of Funderburk against the defendant, King and *the plaintiff, for the price of the r^,. 9F. land ; and before I enter upon what are supposed to be questions L J of more importance, I will dispose of the argument of the counsel opposed to the motion, by which it is insisted, that the debt itself was an equitable lien on the lands, and overreached the claims of the plaintiff as well' as all others. However this may be in point of principle, (and I will not stop to examine it,) the land was not sold under that judgment, nor are the plaintiffs in that cause parties to this suit, or claimiug the benefit of their lien (if in law they have any,) nor can the defendants shelter themselves under it, for there is no privity between them.
The legal estate in the land was confessedly in the defendant, King, at the time the judgments referred to were obtained against him, and the sale made by the sheriff; and the question is, whether the equity of the plaintiff, arising out of the agreement between him and King, that King should convey one half of the land to him on his paying half the price agreed to be paid for the whole, his subsequent possession of the land, and the actual payment of the money, should prevail against the legal rights of the defendants, M’llwain and M’Cardell, who purchased with notice of the nature and extent of the plaintiff’s claim.
If King was under no legal obligation to convey to the plaintiff, or if the legal title acquired by defendants under their purchase, or the equity of the creditors of King at whose suit the land was sold, is entitled to be preferred, then of course the plaintiff is not entitled to the relief which he prays; but if, on the other hand, the rights of plaintiff are to be preferred, he ought not to be disturbed in the possession. In the consideration of the case, it will therefore be necessary to ascertain—
1. What are the rights of the plaintiff, as between King and himself.
2. What are his rights as between the defendants, M’llwain and Mc-Cardell, purchasers with notice — and
3. What are his rights with reference to those who were creditor’s of King at the time he fulfilled his agreement with him, by paying his portion of the price of the land.
1. Notwithstanding the statute of frauds, the Courts of Chancery have, for a long period of years, and through along series of judicial decisions, enforced the specific performance of parol contracts for the sale of lands, where they have been partly performed; and *the ground upon which they have proceeded, is not that they are not within the L original provisions of the statute, but because the suffering of the party who had accepted the performance, to shelter himself under the provisions of the statute, would enable him to practice a fraud at least as odious as that which the statute was intended to prevent, and thus render *326 the statute an instrument of fraud. It is, however, a doctrine which the Courts have carried out with reluctance, and over which they have watched with a jealous circumspection. Hence the rigid proof which is required of the terms of the contract, and the fact of partial performance, for which I refer to Thomson v. Scott, et al. — 1 M’C. Ch. Rep. 33.
The proof here is perhaps as perfect as could be expected to be derived from matters depending on memory, not only of the terms of the agreement between King and the plaintiff, but of the partial execution of it by King, in delivering the possession of the land, and running out and marking a dividing line between them, and of the entire performance by the plaintiff of his part of the agreement, by paying the price stipulated ; and it will suffice to remark of these circumstances, that they constitute the proof required by the most rigid rule. — 1 Mad. Ch. 380.— The plaintiff is therefore entitled, as between himself and King, to a specific performance. This has not been questioned.
2. Regarding the rights of the other defendants, as derived from King, the rule in equity is, that one coming into the possession of trust property with notice of the trust, shall be considered as the trustee, and bound to the execution of the trust with regard to that particular property. As in Taylor v. Stibbert. 2 Ves. jun. 437, where tenant for life granted leases for lives under a power, and bound himself upon the dropping in of a life, to grant new leases with the same provisions for the renewal on the death of any person named in any future lease, and afterwards joined in a sale, though the power was exceeded ; and it was held that a purchaser having notice would be bound to a specific performance, by granting a new lease, with the same provision, if a life dropped in, in the lifetime of his lessor. Now, although the legal estate in the land was in King, yet, ■by accepting performance of the agreement on the part of the plaintiff, he held subject to his equity, and, as trustee, was bound to convey according to the terms of the contract; and the defendants, having had notice at the time they purchased, are bound by the same trusts.
*3. Defendants, MTlwain and M'Cardell, are not only invested under their purchase with all the rights of King, but they are also clothed with the rights of his creditor, at whose instance the land was ■sold. The creditor has the right to have his debt satisfied out of the property of his debtor, .and if it is sold under execution for that purpose, the purchaser is invested, not only with the rights of the debtor, but those of .the -creditor also — which is in some degree peculiar. If, for example, the debtor convey lands after judgment signed against him, or even before, when he conspires with the purchaser to defraud his creditors, a purchaser at sheriff’s sale,.at the instance of the creditor, is entitled to prevail against the voluntary alienee of the debtor, notwithstanding the legal estate of the debtor had been before divested by his voluntary alienation; and in that case, the rights of the purchaser are derived from the creditor, and hence the necessity of the third inquiry proposed.
Some of the debts for which judgments were subsequently obtained against King, were contracted before the plaintiff had performed his part of the agreement to purchase the land, and when the legal title was confessedly in King, and assuming that he obtained credit on the faith that it belonged to him, it is insisted, that in Equity the claims of the creditors ought to be preferred; at any rate that the Court will not aid the plaintiff *327 in doing wrong to the creditors, but leave them to their rights at law. But it will be recollected that at the time plaintiff paid his money, the creditors-had no lien on the land, and that the payment of the money alone, if it gave him no legal right, made him as meritorious a creditor of King, as if he had lent him money or sold him goods, and placed him on at least an equal footing with the other creditors. He was also in possession of the land ; and that, according to some of the English cases, was not only notice to creditors, but sufficient to repel the claims of a subsequent purchaser. In Daniels v. Davidson, 16 Ves. 254, the Lord Chancellor Eldon, observes, that there was- considerable authority for the opinion which he held, that where there was a tenant in possession under a lease or agreement, a person purchasing the estate was bound to inquire on what terms he was in possession, and was bound by the terms of the lease or agreement; and refers to the case of Douglas v. Whitrong, in which Lord Kenyon held, that possession was sufficient notice; and to the case of Taylor v. Stibbert, 2 Ves. jun. *440, in which it was expressly ruled; and if possession alone be notice to a purchaser, L it is necessarily so as to creditors. But the claims of the plaintiff rest, I think, on higher grounds and more satisfactory authority.
The rule in Equity is, that an agreement in writing to convey land in consideration of an adequate price paid, will in Equity bind the, estate, and prevail against any subsequent judgment creditor; and is so laid down by Lord Chancellor Cowper, in Finch v. Winchelsea, 1 P. W. 282. The reason for the rule is well expressed in 1 Eq. Ca. Abr. 320, Tit. Mortgage, where it is said, “ that if a man mortgages by a defective conveyance, and there are subsequent creditors whose debts did not originally affect the land, Equity will supply such defective conveyance against such subsequent incumbrancers who acquired a legal title afterwards ; for since the subsequent creditors did not take the lands for their security, nor have in view an intention to affect them; when afterwards the lands are affected, and they come in under the very person that is in conscience obliged to make the defective security good, they stand in his place and shall be postponed to such defective conveyance.” The same question was so ruled in Taylor v. Wheeler, 2 Vern 564, where a defective mortgage was set up in opposition to the claims of the assignees of the mortgagor who had become bankrupt. In all these cases, it is true, the contracts were in writing, and in that alone they differ from the present case ; but I apprehend the principle equally applies. If the contract is binding on the parties, the legal effect is the same whether it is in writing or by parol. A parol agreement to convey lands set up by the Court, has equal validity with a deed containing a covenant to convey.
The judgment of the Circuit Court is therefore reversed; and it is ordered and decreed that the conveyance of the sheriff to the defendants, MTlwain and M'Cardell, for the lands described in the pleadings, be delivered up to be cancelled; that the said defendants, MTlwain and M'Cardell, be perpetually enjoined and restrained from proceeding- in their action at law against the plaintiff to recover the said land; and that they pay the costs of this suit.
Justices Gantt, Eichardson, O’Neall, Evans and Butler, concurred.